Carl E. Mooradian, Esq. Corporation Counsel, Niagara Falls
I am writing in response to your request for an Attorney General's opinion as to the authority of a city to amend a proposed city charter after the time it is adopted by the electorate and before its effective date.
Your letter notes that in the November, 1985 general election a new charter was adopted for the City of Niagara Falls, with an effective date of January 1, 1988. The procedure for adoption of a new city charter proposed by a charter commission is set forth in section 36
of the Municipal Home Rule Law. A commission to review the current charter and propose a new charter can be formed pursuant to local law enacted by the city's legislative body, by petition of the electorate or by the mayor (Municipal Home Rule Law, § 36[2], [3], [4]). Section 36 provides a general guideline for the establishment of the commission, leaving specific questions as to internal procedure to be established by local law (Matter of Elefante v Hanna, 54 A.D.2d 822 [4th Dept], mod on other grounds 40 N.Y.2d 908 [1976]). The commission has authority to conduct public and private hearings, take testimony, subpoena witnesses and require the production of books, papers and records (id., § 36[6][f]). Once the commission has agreed on a proposal, the proposed charter must be publicized in the manner established by local law or by the commission's regulations, and then submitted to the electors of the city for approval (id., § 36[5][b]).* If the charter is approved, it takes effect as its terms specify (id., § 36[5][d]).
In addition to adoption of charters proposed by a commission, the Municipal Home Rule Law also provides for the adoption of a new charter initiated by petition (id., § 37). If the requisite number** of electors of the city sign a petition for the submission of a proposed charter, it will be placed on the ballot of an upcoming election, the date of which is established by section 37 (id., § 37[2], [7]). The city's power to revise its charter, or adopt a new charter is also referred to in section 10 of the Municipal Home Rule Law. Thus, approval by referendum is an integral part of any means of enacting a new charter. The new Niagara Falls City Charter was proposed by a charter commission and adopted by the city's vote in November of 1985.
The new charter provides that "[t]he several departments and divisions thereof established by the Charter in effect when this Charter is adopted (Laws 1916, Chapter 530, as amended) shall continue in existence and shall continue to perform the functions, powers and duties of City government allocated to them therein" (1988 Charter, § 4.8[b]).
Subsequent to the charter's adoption but prior to its effective date, a new article was added to the current charter creating the Department of Management Information. You have informed us that creation of this department was a structural change involving a transfer of duties from the data processing division of the city comptroller's office. You informed us that the head of this new department, as well as the position of city comptroller, are appointive positions. In addition, numerous amendments were made to the article of the current charter dealing with taxation, including changes in tax billing procedures, taxable status dates, tax billing dates and sewer tax rates.
Your question is whether the city may amend the new charter, prior to the time it becomes effective, in order to incorporate these recent amendments.
It is well settled that a city has the authority to amend its charter by local law (Municipal Home Rule Law, § 10[1][ii][c][1]; 1983 Op Atty Gen [Inf] 84). Furthermore, the local law may be subject to a referendum, depending on the subject of the local law (Municipal Home Rule Law, §§ 23, 24). Section 10 of the Municipal Home Rule Law provides that a city has authority to pass local laws concerning
 "[t]he revision of its charter or the adoption of a new charter by local law adopted by its legislative body pursuant to the provisions of this chapter and subject to the procedure prescribed by the chapter or by local law adopted pursuant to article four of this chapter" (id., § 10[1][ii][c][1]).
There is no discussion in the statute, nor are we aware of any case law which deals with the question of whether the city's authority to revise its charter includes authority to revise a proposed charter after it is approved by the electorate, but before it becomes effective. The question we are presented with appears to be one of first impression.
In our view, the new charter cannot be amended prior to its effective date. Section 10 of the Municipal Home Rule Law gives a city the power to revise "its charter". In our view, this means the charter under which the city is then operating. From the city's point of view today, the charter to take effect January 1, 1988 cannot be "its charter" because the city is currently governed by another charter, the one enacted by the State Legislature in 1916.*
Further, the amendment of the new charter prior to its effective date would essentially vary the established procedure for enacting a new city charter. New charters, whether proposed by a charter commission, or by petition are not effective until they have been voted on and approved by city residents at a general or special election, as provided by law (Municipal Home Rule Law, §§ 36, 37). To amend the charter after that approval, but before the effective date set forth in the charter, is inconsistent with the enactment procedure and, therefore, unauthorized.
This view is supported by the fact that structural changes in city government may be made by a new charter, affecting the procedure for amendment of the charter. For example, city government may change from a weak mayor system to a strong mayor with veto power or the council may change from a ward system to "at large" representation. It would, therefore, be anomalous for a new charter to be amended prior to its effective date.
You have also asked a question concerning membership on the Niagara Falls urban renewal agency. The enabling act for the agency is set forth in section 593 of the General Municipal Law and provides as follows with regard to membership:
 "It shall constitute a body corporate and politic, shall be perpetual in duration, and shall consist of the mayor and all of the councilmen of the city of Niagara Falls, together with four members to be appointed by the mayor with the concurring approval of the city council" (General Municipal Law, § 593).
At the time section 593 was enacted in 1964, the City of Niagara Falls had four councilmen. The new charter to take effect on January 1, 1988 provides for seven councilmen. You have asked whether all seven councilmen will be members of the urban renewal agency, and if so, whether the mayoral appointments will be increased to seven.
The reference to "all" councilmen in section 593 is unequivocal on its face and we conclude that all seven members of the new city council will be members of the urban renewal agency. By using a flexible standard in enacting section 593 in 1964, the Legislature contemplated a change in the number of councilmen, and drafted the statute in such a way so as to allow all members of future councils to sit on the agency.
Section 593 is also unequivocal in allocating the definite number of four positions on the agency to mayoral appointees. There is no basis in the statute for concluding that the mayor is entitled to appoint any number of members other than four.
We conclude that a city may not amend a new city charter approved at a referendum after the date of the election and prior to the charter's effective date.
* This section provides, more particularly, that the charter is to be submitted
 "to the electors of the city at a general or special election held not earlier than sixty days after the filing thereof in the office of the city clerk and not later than the next general election which does not occur within the said sixty days, provided, however, that if such general election occurs within ninety days after the said filing, the proposed charter or amendments shall be submitted at such general election" (id., § 36[5][b]).
** Subdivision 2 of section 37 provides as follows:
 "Qualified electors of a city, in number equal to at least ten per centum of the total number of valid votes cast for governor in such city at the last gubernatorial election, or to thirty thousand, whichever is less, may file in the office of the city clerk a petition for the submission to the electors of the city of such a proposed local law to be set forth in full in the petition. Qualified electors shall be deemed for this purpose to be voters of the city who were registered and qualified to vote in such city at the last general election preceding the filing of the petition."
* Section 2 of the Municipal Home Rule Law defines "charter amendment" as follows:
 "A new charter or any change in an existing charter presented as such under authority of this chapter or any state statute or charter. A charter amendment may be of any extent and may deal with any number of subjects."
For reasons similar to those stated above, we believe that the reference here to "existing charters" means charters operative and in effect. A proposed charter, prior to its effective date has no legal effect or existence, and could not be considered an existing charter under this section.